UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ESSEX INSURANCE COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GOOD DRINKS, LLC d/b/a ) | Cause No. 2:12-CV-011-JD |
| GROWLERS ON HIGHWAY, MYRON ) | |
| CHAPMAN, DAVID PETERSEN, ) | |
| GEORGE PETERSEN, BOBBY BERNA, ) | |
| ANTHONY CHARLES MONALDI, ) | |
| AND MATTHEW MERRY, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court is Plaintiff Essex Insurance Company's Motion for Summary Judgment [DE 15-17] against Defendants Good Drinks, LLC; Myron Chapman; David Petersen; George Petersen; Bobby Berna; Anthony Monaldi; and Matthew Merry (collectively "Defendants"). Defendant Matthew Merry ("Merry") [DE 18-20] and the remaining defendants ("Good Drinks Defendants") [DE 21-22] responded, and Plaintiff replied [DE 23]. For the reasons set forth below, the Court grants the Plaintiff's Motion for Summary Judgment.

### I. BACKGROUND

Defendant Good Drinks, LLC ("Good Drinks") entered into a twelve month commercial insurance liability agreement ("Policy") with Plaintiff Essex Insurance Company, Inc. ("Essex") that began on May 12, 2010 [DE 1-1]. The Policy specifically excluded coverage for:

> 'bodily injury,' . . . or any injury, loss, or damage arising out of: . . . [a]ssault
> and/or [b]attery, or out of any act or omission in connection with the prevention
> or suppression of such acts, whether caused by or at the instigation or direction of

>any Insured, Insured's employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision.

[DE 1-1 at 13].

On October 6, 2011, Merry filed a complaint in state court alleging he was assaulted and battered at Growler's on February 27, 2011 by Defendants Anthony Monaldi and Bobby Berna [DE 1-6; DE 17-2]. In Merry's complaint, he alleged that Good Drinks, LLC, doing business as Growler's, is owned by Defendants Myron Chapman, David Peterson, and George Peterson. At the time, both Monaldi and Berna were employed as bouncers for Good Drinks at Growler's [DE 22 at 3, 5]. Merry not only claimed that Monaldi and Berna committed an assault and battery upon Merry, but that Monaldi and Berna were negligent in dealing with Merry, and in turn, Good Drinks and its owners were vicariously liable for its employees' negligence, assault and battery [DE 1-6; DE 17-2]. Merry additionally complained Good Drinks negligently hired, employed, supervised, and retained Monaldi and Berna. *Id.*

The uncontested facts indicate on February 27, 2011, after drinking approximately eight beers, Merry visited Growler's and danced with two girls he did not know [DE 17-4 at 3]. A male patron named Cory (the brother to one of the girls) approached Merry after the song ended and told Merry not to dance with his little sister because she was married. *Id.*

As Cory and Merry were talking with one another, they each had placed a hand over the other's neck to facilitate conversation. *Id*. Merry testified in his deposition that it was necessary to "mouth-to-ear" talk because it was so loud and crowded [DE 17-4 at 3-4]. Next thing Merry knew, he was on his back being pulled to the ground, and once Merry let go of the bouncer's wrist (which Merry held to prevent the bouncer from punching Merry) the bouncer had Merry's

shirt and another grabbed Merry's pants and carried him to the door and "threw [him] out on the sidewalk." *Id.* Merry admitted that things were escalated between he and Cory, and while there was no kind of physical altercation he believed that the "neck holding between the two of [them] is what brought the bouncers" over. *Id.* at 4. Merry affirmed he did not give consent for the bouncers to touch him and he is "100%" certain his leg was broken during the encounter with the bouncers while inside Growler's—but he did not know what actually caused the injury (whether the bouncers or someone or something else) [DE 17-4 at 4, 6-7; DE 20 at 8; DE 22 at 8].

Berna admits in his affidavit that he approached Merry to break up what he believed was an altercation between Merry and Cory [DE 22 at 3-4]. Monaldi similarly admits that he then intervened in what appeared to be a physical altercation between Merry and Berna [DE 22 at 5-6]. During the bouncers' encounter with Merry, Berna admits he shoved Merry, but claims he did so in self-defense. *Id.* And Merry admits he was combative, or resisted the bouncer by holding his wrists [DE 20 at 11]. Berna also admits he picked Merry up by his pants, while Monaldi held Merry's upper half and they carried Merry out of Growler's [DE 22 at 3-6]. Monaldi similarly concedes he assisted Berna in carrying Merry out of the bar. *Id.* Berna and Monaldi deny they battered or assaulted Merry, and claim they did not intend or expect Merry would be injured. *Id.*

## II. STANDARD OF REVIEW

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt

3

in its favor. *Kerri v. Bd. Of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* On the other hand, where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in that party's favor. *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

### III. DISCUSSION

Essex has sought a declaratory judgment from this Court to determine whether it must defend Good Drinks, its owners and bouncers against Merry's underlying suit. The parties do not raise a choice of law issue (and in fact rely on Indiana law in their briefs) and therefore the Court applies federal procedural law and Indiana state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 345

(7th Cir. 2010) (applying the law of the forum state because no party raised a choice of law issue) (citing *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir. 1985); *Lloyd v. Loeffler*, 694 F.2d 489, 495 (7th Cir. 1982) (same)). Contract interpretation is a substantive issue, *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998); thus, Indiana state law applies to the issues presented in this case.

In Indiana, insurance policies are governed by the same rules of construction as other contracts, and their interpretation is a question of law. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009). When interpreting an insurance policy, the court looks at the terms from the perspective of an ordinary policyholder of average intelligence, *id.*, with the goal of ascertaining and enforcing the parties' intent as manifested in the insurance contract. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). If insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Bradshaw*, 916 N.E.2d at 166. Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, the court construes insurance policies strictly against the insurer. *Id*. The court may not extend insurance coverage beyond that provided in the contract, nor may the court rewrite the clear and unambiguous language of the insurance contract. *Am. States Ins. v. Adair Indus.*, 576 N.E.2d 1272, 1273 (Ind. Ct. App. 1991).

The nature of the claim rather than the merit of the claim determines the insurance provider's duty to defend. *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). Therefore the duty to defend is broader than the duty to indemnify. *Id.* And as noted by the parties [DE 16 at 6-7; DE 18 at 2-3], the allegations of the claim and the facts known or ascertainable by investigation determine the scope of the duty to defend. *See Ind. Farmers Mut.*

*Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1381-82 (Ind. Ct. App. 1997). "[I]f the pleadings fail to disclose a claim within the coverage limits or one clearly excluded under the policy, and investigation also reveals the claim is outside the coverage of the policy, no defense is required." *See id.* at 1382; *see also, Ind. Farmers Mut. Ins. Co. v. North Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1269 (Ind. Ct. App. 2009) (citing *Auto–Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1291 (Ind. 2006) for the proposition that the Indiana Supreme Court has more recently entertained extrinsic, designated evidence when assessing an insurer's duty to defend).

The case essentially comes down to one question: whether or not the Assault and/or Battery ("A&B") exclusion of the Policy applies. If it does, Essex owes no duty to defend. If it does not, Essex retains a duty to defend. The fact that the case revolves around an exclusion simplifies the placement of the burden of proof—it is well-settled that an insurer bears the burden of proving that an exclusion applies. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 725 (Ind. Ct. App. 2004) ("Generally, a coverage exclusion is an affirmative defense, proof of which is the insurer's burden"); *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 309 (Ind. Ct. App. 2001); *see also Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 732 (7th Cir. 2012) (applying Indiana law and determining that coverage exclusions are construed strictly against the insurer who bears the burden of showing the exclusion applies). Accordingly, the Court considers whether Essex has shown the absence of any genuine disputes of material fact with respect to the application of the exclusion, and whether Essex has shown it is entitled to judgment as a matter of law.

Defendants oppose the entry of summary judgment [DE 18 at 4-8; DE 21 at 5-7] and dispute the application of the A&B exclusion. Defendants argue that Berna and Monaldi did not

commit assault and battery and they did not intend to injure Merry. Defendants further believe that a genuine issue of material fact exists relative to the actual cause of Merry's broken leg. The Court disagrees.

In this case, the language of the Policy clearly and unambiguously excludes injuries arising out of assault and battery by stating that "'bodily injury,' . . . or any injury, loss, or damage arising out of: . . . [a]ssault and/or [b]attery" is not covered under the Policy. Granted, "assault" and "battery" are not terms which are defined in the policy, but not every word in a contract must be defined. *Sans v. Monticello Ins. Co.*, 676 N.E.2d 1099, 1101 (Ind. Ct. App. 1997). The clear meaning of assault and battery refers to an intentional touching or the apprehension of such, and does not require an intent to injure. *See Singh v. Lyday,* 889 N.E.2d 342, 360 (Ind. Ct. App. 2008) ("[o]ne is liable for the tort of battery if '(a) he acts intending to cause a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results.'") (citing *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007) (quoting Restatement (Second) of Torts § 13 (1965))). And just as an intentional touching may be a basis for a battery claim, it also may be a basis for an assault claim. *Lessley v. City of Madison, Ind.*, 654 F.Supp.2d 877, 914 (S.D. Ind. 2009) (Hamilton, J.) (citing *Singh*, 889 N.E.2d at 360). There is no other reasonable interpretation of these contract terms. *See e.g., Knight v. Ind. Ins. Co.,* 871 N.E.2d 357, 362 (Ind. Ct. App. 2007) ("[a]n assault creates an apprehension of imminent harmful or offensive contact, while battery is the intentional harmful or offensive contact . . . [a] touching, however slight, may constitute an assault and battery") (citation and internal citation omitted); *Smock v. American Equity Ins. Co.*, 748 N.E.2d 432, 436 (Ind. Ct.

App. 2001) ("[t]he policy does not define [battery for purposes of the assault and battery exclusion], but an English language dictionary provides that a 'battery' is 'the act of battering, beating, or pounding . . . [the] illegal beating or touching of another person'") (citing *Webster's New World Dictionary* 118 (3rd college ed. 1988)); *Merriam-Webster's Collegiate Dictionary* 73, 104 (11th ed. 2003) (defining battery as "an offensive touching or use of force on a person without the person's consent" and defining assault as "a threat or attempt to inflict offensive physical contact or bodily harm on a person . . . that puts the person in immediate danger of or in apprehension of such harm or contact."). Notably, the parties do not argue that either of the terms are ambiguous, nor do they present alternative interpretations for the terms "assault and battery." [DE 16 at 9; DE 18 at 3-4; DE 21 at 4-7; DE 23 at 2-7]. Rather, Defendants seemingly argue disputed issues of material fact exist concerning whether an assault and battery occurred during the encounter inside Growler's.

To the extent Berna and Monaldi draw the unsupported legal conclusion in their affidavits that they did not assault and batter Merry, their undisputed actions belie such an assertion. Here, the designated evidence shows that by their own admissions Berna "shoved" "picked up" and "grabbed" Merry who resisted, while Monaldi "picked up" and "carried" Merry out of the bar. And Merry's own admissions establish that he physically resisted by grabbing one of the bouncer's wrists to prevent the bouncer from punching Merry. No reasonable trier of fact could draw the inference that the acts committed during the physical altercation were accidental, welcomed, or unoffensive. What Berna did was a battery, what Monaldi did was a battery, and what Merry did was a battery.[1] Moreover, the facts of this case are readily distinguished from

---

[1] And any claim of self-defense does not purge an act of its intended nature, instead, it is a justification for intended action. *Home Ins. Co. v. Neilsen*, 332 N.E.2d 240, 244 (Ind. Ct. App. 1975).

cases involving material disputes over whether the intent to apply the force constituting battery is established. *See Sans*, 676 N.E.2d at 1104 (the court was not prepared to hold "as a matter of law" that the gun could not have been fired accidentally, and therefore it was genuinely disputed whether the shooting of the gun was intentional, and as a result, whether the shooting constituted an assault and battery); *Franklin Gen. Ins. Co. v. Hamilton*, 133 N.E.2d 93 (Ind. Ct. App. 1956) (holding the evidence raised a question of fact as to whether injury was the result of an assault and battery because the insured driver did not see the victim near the car before backing up and the driver tried to stop as soon as he saw the victim). Therefore, unlike the possible accidental touching involved in *Sans* and *Franklin,* the Defendants' own uncontroverted admissions, although each somewhat unique, establish they committed assault and battery because the touchings were intended.[2]

Essex and the Defendants further disagree about the appropriate intent element required of an assault and battery:  Defendants argue Essex has not provided evidence which leads to the sole and only conclusion that the conduct of Berna and Monaldi showed they had the requisite *intent to injure* Merry; whereas, Essex argues that the only reasonable inference that need be drawn from the evidence establishes the bouncers' *intent to apply the force constituting battery* and therefore Essex is entitled to judgment as a matter of law.

Defendants rely on *Sans v. Monticello Ins. Co.*, 676 N.E.2d 1099 (Ind. Ct. App. 1997) wherein the insurance policy at issue covered "bodily injury . . . neither expected nor intended from the standpoint of the insured" ("first clause") and excluded coverage for "bodily injury . . .

---

[2] As discussed *infra*, the Policy also excludes coverage for bodily injury arising out of Berna, Monaldi, and/or Merry's "act[s] or omission[s] in connection with the prevention or suppression of such acts." The uncontested facts similarly establish the application of this exclusion.

9

arising out of assault & battery or out of any act or omission in connection with the prevention or suppression of such acts" ("second clause"). *Sans v. Monticello Ins. Co.*, 718 N.E.2d 814, 817 n. 6, 7 (Ind. Ct. App. 1999). Clearly, the A&B exclusion at issue in this case, is akin to the second clause involved in *Sans*. However, Defendants mistakenly rely on the first clause of *Sans* which concerns an "expected or intended" injury, and thus argue that the bouncers must have intended to injure Merry in order for coverage to be denied. *Sans*, 676 N.E.2d at 1102-04 ("We have analyzed Indiana law with respect to standard 'intended or expected' exclusionary clauses . . ."). Not only did *Sans* analyze "intended or expected" exclusionary clauses, but it relied on cases that involved the same type of clause. *See id*. (quoting *Stevenson v. Hamilton Mutual Ins. Co.,* 672 N.E.2d 467, 470-72 (Ind. Ct. App. 1996) (involving a standard policy exclusion for intentional or expected conduct)). In turn, the court in *Stevenson* relied on *Trisler v. Ind. Ins. Co.,* 575 N.E.2d 1021 (Ind. Ct. App. 1991) which explicitly discussed Indiana's analysis of standard "intended or expected" exclusionary clauses. And similar to the first clause of *Sans*, *Trisler* involved an insurance policy which provided coverage for "an accident . . . which results in personal injury . . . neither expected nor intended from the standpoint of the insured," and excluded coverage for acts committed by Trisler "with intent to cause personal injury." *Trisler*, 575 N.E.2d at 1023-24. Thus, while it is clear that "intended or expected" clauses requires an intent to injure, the same clause is not at issue in this case.

The distinction between bodily injury "caused intentionally" versus contracts which expressly exclude damages resulting from an assault and battery was similarly addressed in *Home Ins. Co. v. Neilsen*, 332 N.E.2d 240 (Ind. Ct. App. 1975). In *Neilsen*, the Court noted that the contract did not expressly exclude damages from an assault and battery, "[i]nstead, it speaks

10

of injuries caused intentionally." *Id*. at 243. The Court determined that the exclusion for "bodily injury . . . caused intentionally" was ambiguous, and therefore the policy was construed against the insurer to exclude coverage for "an intentional act with was intended to cause injury." *Id*. at 244. However, even employing an interpretation favoring the insured, the court still held that insurance coverage was properly excluded where the insured had admitted that he had intentionally struck the other man although he had not intended to cause injury. *Id*. at 243-44. The Indiana Court of Appeals reasoned that the insured could not avoid the inference of intent to harm that necessarily follows the deliberate blow to the victim's face. *Id*. at 451; *but see, State Farm Fire & Casualty Co.*, 858 F.Supp.2d 971 (N.D. Ind. 2012) (Miller, J.) (holding that a genuine issue of material fact existed as to whether the insured's son intended to cause harm, although he admittedly intentionally struck another minor, because the policy only excluded coverage for "bodily injury . . . which is either expected or intended by the insured").

All of this is to say, that unlike the first clause of *Sans*, the Essex A&B exclusion does not contain an "intentional or expected injury" clause, rather it clearly excludes coverage for injuries arising out of an assault or battery. Given this, the holding of *Smock v. American Equity Ins. Co.,* 748 N.E.2d 432, 435 (Ind. Ct. App. 2001) supports the conclusion that Essex's A&B exclusion applies making summary judgment appropriate. In *Smock*, the Strawn's (parents of their deceased son Michael), sued KTK (owner and operator of Body Shop Showclub), the club's bouncer Ronald Smock, and Steven Toscano (a friend of Michael's) for negligently causing Michael's death and negligently hiring and training Smock. 748 N.E.2d at 434. The lawsuit was based on an incident wherein Michael was patronizing the club when he became belligerent after consuming alcohol and marijuana, and was removed from the club by Smock.

*Id*. at 433.  Toscano attempted to take Michael home, but Michael resisted by striking Toscano. *Id*.  At one point, Toscano placed his hand on Michael's neck. *Id*.  Smock then intervened by placing Michael in a "sleeper hold" rendering Michael unconscious.  *Id*.  Ultimately, Michael was later found dead due to asphyxiation from manual strangulation, but it could not be determined whether death resulted from the "sleeper hold" or from compression by a broader surface, such as a forearm or foot. *Id*. at 433-34.

The *Smock* Court specifically analyzed whether the conduct alleged was excluded from coverage by the policy which barred coverage for bodily injury:

> (1) Expected or intended from the standpoint of any insured; or
> (2) Arising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault or battery, committed by any Insured or an employee or agent of the insured.

748 N.E.2d at 435.  The Court noted that even though "[t]he parties vehemently disagree[d] as to whether Smock intended to inflict injury and, thus, whether the 'expected or intended' part of the exclusion applies," it need not decide the issue because the case was readily decided on the second clause of the policy relating to batteries. *Id*. at 435 n. 5.  Concluding that what Smock did was a battery, what Toscano did was a battery, and what Michael did was a battery, the Court determined that under the exclusion, there is no coverage if bodily injury arose out of an employee's battery. *Id*. at 435.  And although it was uncertain whether Smock's act of placing a "sleeper hold" on Michael's neck actually caused Michael's death, the Court held that to the extent the underlying wrongful death complaint asserts that KTK and Smock are liable for Smock's battery, the claims are excluded under the assault and battery provision. *Id*.

Relevant to Merry's negligence claims, the Court further determined that the assault and battery clause excluded any claim for negligence relating to Smock's failure to prevent or

suppress batteries committed by third parties. *Smock*, 748 N.E.2d at 436.  Thus, a "necessary corollary is that the exclusion also applies to KTK under the theory of respondeat superior." *Smock*, 748 N.E.2d at 436.  Going one step further, even though the policy did not expressly exempt from coverage the claim against KTK for negligent hiring, supervision, and training of Smock, the Court explained that the exclusion expressly applied to bodily injury arising out of an employer's acts or omissions relating to prevention or suppression of a battery, and therefore even if the batteries were the result of KTK's own negligence the exclusion applied. *Id*.

As in *Smock*, Essex's A&B exclusion prevents coverage for: "'bodily injury,' . . . or any injury, loss, or damage arising out of: . . . [a]ssault and/or [b]attery, or out of any act or omission in connection with the prevention or suppression of such acts."  However, Essex's policy is more broad in two respects: it explicitly excludes coverage for the same whether "caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person"; and, it explicitly precludes coverage "with respect to any charges or allegations of negligent hiring, training, placement or supervision."

In this case, Merry has admitted that he is absolutely certain his injuries occurred during the encounter with the bouncers while inside Growlers, even though he is uncertain as to what actually caused his broken leg.[3]  Additionally, it is uncontested that just prior to the altercation between Merry and the bouncers, things were escalated between Merry and Cory who had a hold of each others' necks (although Merry suggests it was simply to facilitate their communication in loud surroundings) and Berna believed these patrons were engaged in a "physical altercation."

---

[3]Merry argues another patron or employee may have stepped on his leg or the loud noise and crowd contributed to his injury by limiting communication thereby causing the altercation.  But the actual cause of Merry's injury matters not since the injuries undisputedly arose out of an assault and battery (or even prevention thereof) during the encounter with the bouncers. *See Smock*, 748 N.E.2d at 435.

Thereafter, Monaldi intervened believing Merry and Berna were fighting. Even Merry admitted that the bouncers likely came over because of the "neck holding" and that he physically resisted the bouncers to prevent one of the bouncers from hitting him. Thus, the A&B exclusion prevents coverage for Merry's bodily injury which arose not only from the assault and battery, but out of Berna, Monaldi, and Merry's acts or omissions in connection with the prevention or suppression of such.

As in *Smock*, Merry's bodily injuries arose out of Berna and Monaldi's battery of Merry, out of their acts or omissions in connection with the prevention or suppression of batteries by others (like Coy or Merry), out of Merry's prevention or suppression of a battery, and/or out of the Good Drinks, LLC and its owners' acts or omissions relating to any said battery (including the possibility that the bar was too crowded and that one of the patrons caused the injury or the music too loud—as Defendants contend). There simply is no basis for the argument that Merry's state court claims did not arise out of an assault and battery occurring inside Growler's, even if the actual cause of Merry's broken leg is unknown—because it is undisputed that the injury occurred during that incident. Consequently, the A&B exclusion clearly and unambiguously precludes coverage for the claims raised in Merry's underlying state court action because the claims were brought for injuries that arose from the assault and battery incident at Growler's.

Since there is no genuine issue of material fact that the Policy clearly excludes the conduct complained of in Merry's state court complaint, Essex is entitled to judgment as a matter of law. It is for the state court in the underlying case to determine the merit of Merry's claims and the liability, if any, of the Defendants. In the Seventh Circuit, an insurance company ordinarily cannot obtain declaratory judgment regarding its duty to indemnify before its insured

is found liable. *Lear Corp. v. Johnson Elec. Holdings, Ltd*, 353 F.3d 580, 583 (7th Cir. 2003). Indeed, "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995). When a party seeks a declaratory judgment on an unripe duty-to-indemnify claim, it is proper for the Court "to dismiss that aspect of the case[.]" *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010). Therefore, the Court finds that any declaratory judgment concerning Essex's duty to indemnify issued prior to the establishment of liability would be an improper exercise of its authority, and would amount to an adjudication of a dispute that is not ripe.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Plaintiff's Motion for Summary Judgment, and judgment shall be entered in favor of Plaintiff Essex Insurance Company, Inc. declaring that Essex has no duty under the Policy to defend against any of Merry's claims alleged in his state court complaint filed in Lake County, 45D03-1110-CT-0195. Any claim relative to Essex's duty to indemnify is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

ENTERED:   June 4, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court